UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| RES DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MOMENTIVE PERFORMANCE<br>MATERIALS INC.,<br><br>Defendant. | No.: 5:09-cv-491-Oc-32JBT |

**PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE
MOTION TO COMPEL DISCOVERY AND MEMORANDUM IN SUPPORT**

Plaintiff, RES Development Corporation ("RES"), by counsel and pursuant to this Court's Order dated June 1, 2011, submits the following Motion for Extension of Time to File Motion to Compel Discovery and Memorandum in Support:

### ARGUMENT

Defendant Momentive Performance Materials Inc. ("Momentive") is challenging RES's request to file a motion to compel after the discovery cut-off, claiming that the motion comes too late. Denying RES an opportunity to file a motion to compel would reward Momentive's dilatory tactics, deprive RES of important discovery that it has been unable to obtain through no fault of its own, and negatively impact the possibility of resolving this case before trial through settlement. In addition, because no trial date or other deadlines have been set, permitting RES to file a motion to compel would not affect the remaining schedule in this case.

Finally, RES has been diligently attempting to obtain the discovery that is the subject of the motion to compel. Under this Court's Rules, discovery may be obtained following the discovery cut-off as long as the party seeking the discovery has acted diligently.

For these reasons, the Court should permit RES to file a motion to compel discovery.

### A.   The Discovery At Issue.

RES is seeking discovery relating to the manufacture and sale of the products accused of infringement in this case, namely "batch sheets" that describe the content and quantity of those products. RES is further seeking to depose a Momentive witness regarding the batch sheets and related documents that were produced to RES after RES took Momentive's 30(b)(6) deposition. Finally, RES may request permission to obtain discovery from a third-party manufacturer of the accused products, because Momentive did not disclose the existence or identity of the manufacturer until well after the discovery cut-off.

Momentive has asserted – multiple times – that it has searched for and/or produced all information relating to the batch sheets. But the fact that Momentive continued to find more batch sheets only after repeated requests from RES underscores the need to have this Court enter an order requiring Momentive to search for and retrieve all of the batch sheets. In addition, fairness requires that RES have an opportunity to depose a Momentive witness (RES would be willing to limit the deposition to one day at a location of Momentive's choosing) regarding information produced to RES after RES took Momentive's 30(b)(6) deposition in November, 2010.

    B.    **RES Has Been Attempting To Obtain The Requested Discovery For Months.**

As discussed more fully below, RES diligently attempted to obtain the requested discovery – both before and after the discovery cut-off date.

    1.    **RES Repeatedly Attempted to Obtain The Discovery *Before* the Cut-Off.**

In its Response to RES's Amended Motion to Seal, Momentive argued that RES's motion to compel would be untimely because it is being brought after the close of discovery. Momentive further claimed that RES failed even to raise any issue about discovery until February 22, 2011, after discovery closed on December 3, 2010.

To support its claim of untimeliness, however, Momentive has cherry-picked from the record and has omitted significant events leading up to the motion to compel. The full chronology of events is as follows:

On February 18, 2010, shortly after discovery commenced, RES served document requests on Momentive. Among other things, RES requested "All documents reflecting the chemical composition of Momentive's Thermoset Resins." See Plaintiff's First Request for Production of Documents and Things (Nos. 1-43), Request No. 11 (attached hereto as Exhibit 1). RES also requested "All sales documents, including invoices, purchase orders, receipts, spreadsheets, databases, and other documents showing the quantity of Momentive's Thermoset Resins that Momentive made, used, sold, offered for sale, or imported within the United States from January 1, 2002 through the present." See Request No. 29.

In response to RES's document requests, Momentive produced certain sales documents as well as other documents showing the chemical composition and quantity of

the accused products Momentive had manufactured. Many of these documents are known as "batch sheets." Batch sheets provide information about each "batch" of product Momentive has manufactured, including the chemical composition of the products and the quantity manufactured.

Momentive produced a quantity of batch sheets in late September, 2010, approximately one week before the originally-scheduled 30(b)(6) deposition of Momentive and one month before the original close of fact discovery.[1] This production occurred *seven* months after RES served its document requests.

On September 30, 2010, RES stated that, in light of Momentive's late document production, Momentive's 30(b)(6) deposition might have to be postponed. Exhibit 2.[2] Momentive informed RES, among other things, that Momentive's recent production included batch sheets "which go back to 1995." Id.

On October 1, 2010, RES informed Momentive that Momentive's recent document production necessitated a postponement of the 30(b)(6) deposition. Exhibit 2. RES also stated that:

> Will there be further documents or is Momentive's production complete? I don't want to be in a situation where we move forward with the depos and receive other documents after-the-fact that would require us to re-depose witnesses.

Id.

Momentive responded by stating that "[t]he *only remaining documents that I am waiting for* are financial documents . . . ." Exhibit 2 (emphasis added). RES then

---

[1] The original discovery cut-off was October 29, 2010. With the Court's permission, the parties agreed to an extension of the discovery cut-off to December 3, 2010.

[2] Certain exhibits attached to this motion have been redacted to prevent disclosure of information Momentive has designated as "Confidential."

suggested that Momentive's 30(b)(6) deposition be postponed until early to mid-November which "would give Momentive time to complete its document production well in advance of the deposition . . .." Id.

On November 2-3, 2010, RES deposed Momentive pursuant to Rule 30(b)(6). During that deposition, RES questioned *three* different Momentive witnesses about the batch sheets. RES asked Momentive's witnesses numerous questions about the batch sheets, including, among other things, the content of the batch sheets, when a batch sheet is created, and the meaning of certain references to the batch sheets in Momentive's sales documents.[3]

RES also questioned Momentive about where the accused products had been manufactured. Documents produced by Momentive long after the discovery cut-off showed that Momentive's testimony regarding the manufacturing location was not true. Thus, not only did Momentive provide this significant information well after the discovery cut-off, the information it provided contradicted the sworn testimony of its own 30(b)(6) witness.

Although RES understood from Momentive that Momentive's document production was complete, RES became concerned about missing batch sheets based on the documents that Momentive had produced and Momentive's 30(b)(6) deposition testimony. Accordingly, on November 15, 2010, RES requested Momentive to produce

---

[3] At Momentive's deposition, Momentive's counsel designated the entirety of the 30(b)(6) deposition as "Confidential – Attorneys' Eyes Only." Thus, RES cannot refer to specific portions of that deposition in this motion without violating the Protective Order. Despite the fact that Momentive's counsel stated he would review the transcript and designate portions of it Momentive deemed to be truly confidential, no designation was ever provided. This fact simply illustrates why RES should be permitted to file its motion to compel under seal so RES has an opportunity to present its arguments fully.

any remaining batch sheets. Exhibit 3. On that same day, Momentive responded that it would search for additional batch sheets and produce them. Id.

On November 29, 2010, RES again requested the batch sheets. Exhibit 4. Momentive indicated *for a second time* it was producing "the remaining batch sheets [it] has been able to locate." Id. RES received additional batch sheets from Momentive that same day.

      2.    RES Repeatedly Attempted to Obtain The Discovery *After* the Cut-Off.

Fact discovery closed on December 3, 2010. A hearing regarding claim construction was held on December 21, 2010. At that hearing, the Court asked if the parties had completed fact discovery. In response, RES's counsel stated that discovery was "finished" except for a "couple of outstanding issues" that the parties would try to resolve. Exhibit 5. Shortly after the claim construction hearing, the Court issued its opinion on claim construction and the parties were ordered to prepare a scheduling order that would govern the remainder of the case.

RES continued its review of the batch sheets and sales documents provided by Momentive. It appeared to RES that there were more missing batch sheets, including batch sheets for physical samples of the accused products Momentive had previously provided. On February 1, 2011, RES requested those batch sheets. Exhibit 6. Momentive responded *for a third time* that it had "produced all of the batch sheets that [it] could locate." Id. But Momentive's claim that it had finally produced "all" batch sheets did not make sense based on RES's review of other documents Momentive had produced.

Accordingly, RES wrote to Momentive on February 22, 2011 and specifically identified a number of batch sheets that Momentive still had not produced. Exhibit 7. When Momentive failed to respond to that letter, RES sent a follow-up letter on March 3, 2011. Exhibit 8.

Momentive finally responded on March 4, 2011, and again stated *for a fourth time* that it would search for, and produce, any missing batch sheets. Exhibit 9. Considering that discovery had closed on December 3, 2010 and Momentive *still* had not produced all of the previously requested batch sheets, RES demanded that Momentive produce all remaining batch sheets by March 9, 2011. Exhibit 10. On March 8, the parties had a telephone conference to attempt to resolve the dispute regarding the still-missing batch sheets. On March 9, RES, per the parties' agreement, identified additional specific batch sheets and sales information that were still missing. Exhibits 11 and 12.

On March 14, 2011, Momentive produced a few additional batch sheets and stated *for the fifth time* that it would "continue working . . . to try and locate" batch sheets that it had not produced. Exhibit 13. Momentive also agreed to produce certain batch sheets from its facility in Germany. Id.

On March 21, 2011, RES followed up with Momentive regarding the remaining missing batch sheets. Exhibit 13. On that same day, Momentive responded *for a sixth time* that it was continuing to look for the missing batch sheets. Exhibit 13. On March 28, 2011, Momentive produced a handful of batch sheets.

On April 7, 2011, RES requested Momentive to agree to the entry of an order from this Court requiring Momentive to produce all remaining batch sheets by a date certain and to allow RES to take a 30(b)(6) deposition regarding the batch sheets and

sales information. Exhibit 14. Momentive refused to agree to such an order and claimed, *for a seventh time*, that it had produced "all" of the batch sheets it had been able to locate. Exhibit 15.

On April 27, 2011, RES requested that Momentive produce any remaining batch sheets from its German facility.[4] Exhibit 16. Momentive agreed to produce the remaining German batch sheets. Exhibit 17. Momentive produced those batch sheets on May 5 and 12, 2011.

On May 11, 2011, Momentive claimed, *for the eighth time*, that "all of the batch sheets that could be located have been produced." Exhibit 18.

Momentive has thus claimed time after time that it has searched for and/or produced all of its batch sheets – only to backtrack from those claims when RES identified additional batch sheets that Momentive had failed to produce.

### C. Because RES Acted Diligently In Seeking The Discovery At Issue, It Should Be Permitted To File The Motion To Compel.

As set forth above, RES acted diligently and in good faith to try to resolve this discovery dispute. Any delay in bringing this motion is due to Momentive's failure to produce documents that RES requested at the very beginning of the discovery period. RES should not be prejudiced due to Momentive's own dilatory conduct.

When a party seeks an extension of a deadline contained in a scheduling order entered by the court pursuant to Federal Rule 16(b), it must ordinarily demonstrate good cause for the extension. See Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir.

---

[4] Momentive has claimed that RES waited several weeks before requesting the remaining German batch sheets after Momentive initially offered to provide them. However, the batch sheets are written in German, making them difficult to interpret, and RES simply did not decide until later that it wanted to review the remaining sheets.

1998). "To show good cause, a party must, as a prerequisite to further consideration of the motion, show diligence as to the matter that is the subject of the motion . . .." Wolf Designs, Inc. v. DHR & Co., 231 F.R.D. 430, 436 (N.D. Ga. 2005). Put simply, the good cause requirement contained in Rule 16(b) "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." Sosa, 133 F.3d at 1418.

Furthermore, under Middle District of Florida Local Rule 3.09(b), "[f]ailure to complete discovery procedures within the time established pursuant to Rule 3.05 of these rules shall not constitute cause for continuance unless such failure or inability is brought to the attention of the Court at least sixty (60) days in advance of any scheduled trial date and is not the result of lack of diligence in pursuing such discovery."

Section F, Completion of Discovery, of The Handbook on Civil Discovery Practice for the Middle District of Florida, also provides as follows:

> 1 - Deadline for Discovery Completion.
>
> The Court ordinarily sets a discovery completion date through its Case Management and Scheduling Order (although a Judge may have another method of setting and extending that deadline). The Court follows the rule that the completion date means that all discovery must be completed by that date. For example, interrogatories must be served more than thirty days prior to the completion date to permit the opposing party to respond before the discovery deadline. Untimely discovery requests are subject to objection on that basis. Counsel, by agreement, may conduct discovery after the formal completion date but should not expect the Court to resolve discovery disputes arising after the discovery completion date.
>
> 2 - Extension of Time for Discovery Completion.
>
> Occasionally, the Court will allow additional discovery time upon motion, but it is a serious mistake to assume that an extension of the discovery completion date will be granted. When allowed, the discovery completion date is normally extended only upon a written motion showing good cause (including due diligence in the pursuit of discovery before the completion

date) and stating both the specific additional discovery needed and its purpose. Motions for extension of discovery time are treated with special disfavor if filed after the discovery completion date and will normally be granted only if it clearly appears that an extension will not necessitate the continuance of a scheduled trial.

RES has clearly been diligent in its pursuit of the requested discovery. It made repeated requests to Momentive for the information it was seeking and Momentive claimed on multiple occasions that there was "nothing more." RES acted in good faith to attempt to work through this discovery dispute before and after the close of discovery, so as to avoid having to bring the matter before the Court. Under these circumstances, a short extension of discovery for the limited purpose of permitting RES to complete the requested discovery is warranted.

    D.    <u>No Further Deadlines Have Been Set In The Case So Permitting RES To File Its Motion To Compel Would Not Affect The Case Schedule.</u>

There has been no trial date scheduled in this matter and no further deadlines in the case have been set (including deadlines for expert discovery and summary judgment). Permitting RES to file its motion to compel would accordingly have no impact on the case schedule or necessitate the postponement of any deadlines. Discovery closed several months ago, and since then the Court has permitted the parties to explore settlement in lieu of entering a final scheduling order.

Because there would be little, if any, impact on the schedule in this case if RES were permitted to file a motion to compel, RES's request for an extension of time to file its motion to compel should be granted.

## CONCLUSION

Based on the foregoing, RES respectfully requests the Court permit it to file a motion to compel, and for any further relief the Court deems just and proper.

RES DEVELOPMENT CORPORATION
By Counsel


REED SMITH LLP


　　　　/S/ Matthew R. Sheldon
Mark W. Wasserman (*admitted Pro Hac Vice*)
Matthew R. Sheldon (*admitted Pro Hac Vice*)
3110 Fairview Park Drive
Suite 1400
Falls Church, Virginia 22042
Telephone: (703) 641-4229
Fax: (703) 641-4340
E-mail: mwasserman@reedsmith.com
　　　　　msheldon@reedsmith.com


John B. Fuller (Florida Bar No. 161931)
Gordon J. Glover (Florida Bar No. 14345)
AYRES CLUSTER CURRY MCCALL COLLINS
　& FULLER, P.A.
Post Office Box 1148
Ocala, Florida 34478-1148
Telephone: (352) 351-2222
Fax: (352) 351-0312
E-mail: john.fuller@ayresclusterlaw.com
　　　　　Gordon.glover@ayresclusterlaw.com

Counsel for Plaintiff, RES Development Corporation

## CERTIFICATE OF SERVICE

      I hereby certify that on the 13th day of June, 2011, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record in accordance with the Federal Rules of Civil Procedure.

                                                                   /s/ Matthew R. Sheldon
                                                                 Matthew R. Sheldon