**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

RES DEVELOPMENT CORPORATION,

        Plaintiff,

vs.                                                Case No. 5:09-cv-491-Oc-32GRJ

MOMENTIVE PERFORMANCE
MATERIALS INC.,

        Defendant.

## ORDER

Plaintiff RES Development Corporation ("RES") alleges that certain products of defendant Momentive Performance Materials, Inc. ("Momentive") infringe U.S. Patent No. 6,841,602, entitled "Thermoset Polymers With Polyflouroalkylsiloxane Modified Surfaces" (the "'602 patent"). This case is before the Court on Momentive's Motion for Summary Judgment of Invalidity. (Doc. 89.) The Court considers Momentive's motion and declarations in support (Docs. 89-94, 105, 106), RES's Opposition and exhibits (Doc. 99), Momentive's Reply and supporting declarations (Docs. 111-115), and RES's Sur-Reply (Doc. 116). The Court held a hearing on July 20, 2012, the transcript of which is incorporated by reference. (Doc. 135.)

**I.     BACKGROUND**

Momentive is a specialty chemical company that produces silicones and silicone derivatives. (Doc. 89 at 3.) RES owns the '602 patent, which claims a thermoset resin containing certain beneficial properties that make it useful in molding applications. (Docs.

89 at 4, 99 at 3.) The application for the '602 patent was filed on October 17, 2001. RES asserts that two products sold by Momentive, FSL 7208 and FSL 7210, infringe the '602 patent.

The accused products were initially developed in the early 1980s by Momentive scientist Dr. Edwin Robert Evans.[1] (Doc. 89 at 5.) These products are liquid rubber compositions that are primarily used to make electrical connectors in the aerospace industry. (Id.) FSL 7208 and FSL 7210 are similar products that are sold to different customers. (Id.) Momentive began selling each product by at least 1984. (Id. at 7.)

## II.     STANDARD OF REVIEW

Summary judgment is appropriate in a patent case where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc., 911 F.2d 670, 672-73 (Fed. Cir. 1990)(citing Fed. R. Civ. P. 56(c)). "In ruling on a motion for summary judgment, the district court is required to view the evidence presented in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of the nonmoving party." Id. at 672. "'In rendering a decision on a motion for summary judgment, a court must view the evidence presented through the prism of the substantive evidentiary burden that would inhere at trial.'" Apple Computer, Inc. v. Articulate Sys., Inc., 234 F.3d 14, 20 (Fed. Cir. 2000)(citation omitted).

---

[1] At this time, Momentive was operating as the Silicone Products Business Division of General Electric. (Doc. 89 at 3.)

**III.     DISCUSSION**

For purposes of this motion, Momentive relies on RES's allegations of infringement to show that the accused products practice the invention of the '602 patent. (Doc. 89 at 12, 15.) Momentive asserts, however, that the '602 patent is invalid under 35 U.S.C. §§ 102(a),(b), and (g)(2) because it produced and sold the accused products more than fifteen years before the application for the '602 patent was filed. (Id.) RES contends that summary judgment should not be granted because a material dispute of fact exists as to whether the accused products have materially changed since the invention of the '602 patent. (Doc. 99.)

Under Section 102, a person is not entitled to a patent if:

> (a)  the invention was known or used by others in this country . . . before the invention thereof by the applicant for patent, or
> (b) the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States, or
> . . .
> (g)(2) before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it.

35 U.S.C. § 102. Thus, to establish invalidity under Section 102, Momentive must establish that the invention of the '602 patent was "known," "used," or "made" by others prior to the patentee's invention or "on sale" more than one year prior to the filing of the application for the '602 patent.

The Court will begin its analysis with the "on-sale" bar of Section 102(b). "[A] claimed invention is considered to be on sale within the meaning of Section 102(b) if, more than one year before the filing date to which the claim is entitled (the critical date), two conditions are satisfied. First, the product must be the subject of a commercial offer for sale. Second, the

invention must be ready for patenting," which can be established by proof of a reduction to practice. Vanmoor v. Wal-Mart Stores, Inc., 201 F.3d 1363, 1366 (Fed. Cir. 2000) (citing Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 67 (1998)). The party asserting the on-sale bar has the burden to prove, by clear and convincing evidence, that these requirements have been met. Id. "The ultimate determination that a product was placed on sale under 35 U.S.C. § 102(b) (1994) is a question of law, based on underlying facts." Vanmoor, 201 F.3d at 1366 (quotation omitted).

The parties agree that the critical date is October 17, 1999. (Docs. 99 at 8 n.2; 135 at 7.) There is also no dispute that FSL 7208 and 7210 were sold for many years before that date. (Doc. 89 at 16-17, 19-20.) The only remaining issue is thus whether FSL 7208 and 7210 embodied the patented invention at the time of the pre-critical date sales.

For summary judgment purposes, a party alleging the on-sale bar can meet its burden of proving that its product currently embodies the invention by relying on the patentee's allegations of infringement. See Teva Pharm. Indus. Ltd., v. Astrazeneca Pharm. LP, 661 F.3d 1378, 1382 (Fed. Cir. 2011); Vanmoor, 201 F.3d at 1366; Evans Cooling Sys., Inc. v. General Motors Corp., 125 F.3d 1448, 1451 (Fed. Cir. 1997). Momentive then must show that no material dispute of fact exists as to whether the products it sold prior to the critical date are identical in all material respects to the products that are now accused of infringement. See Resqnet.com, Inc. v. Lansa, Inc., 382 F. Supp. 2d 424, 438 (S.D.N.Y. 2005)(rev'd in part on other grounds at 594 F.3d 860 (Fed. Cir. 2010)); Cognex Corp. v. Vcode Holdings, Inc., No. 06-1040 (JNE/JJG), 2008 WL 2113661 at *21 (D. Minn. May 19, 2008).

To show that FSL 7208 and 7210 have not changed, Momentive primarily relies on the declaration of Dr. John S. Razzano and production records (or "batch sheets") of FSL 7208 and 7210 from before and after the critical date.[2] Dr. Razzano is a process chemist who has worked at the Momentive plant that produces FSL 7208 and 7210 for approximately 40 years. (Doc. 106 at 1.) Dr. Razzano explains that the batch sheet for each production of FSL 7208 and 7210 "contains the exact formulation and identifies the number of pounds or grams of every ingredient used in the formulation." (Id. at 5.)[3] Dr. Razzano avers that he reviewed a number of batch sheets from the pre-critical dates of March 1998, November 1998 and May 1999, and the post-critical date of September 2009. Based on this review and his personal knowledge from working at the plant, Dr. Razzano concludes that "the materials used to make these products have not changed" since the "mid-1980s." (Id. at 3-4, 7.)[4]

---

[2] RES moves to strike Dr. Razzano's declaration on the grounds that he does not base his conclusions on personal knowledge and the batch sheets he relies upon are inadmissible hearsay. (Doc. 98.) Momentive has thus filed an Amended Declaration. (Doc. 106.) To the extent that RES's motion has not been rendered moot, it is due to be denied. Because Dr. Razzano has been designated as Momentive's Rule 30(b)(6) witness, he may testify based on his review of Momentive's documents as well as his personal knowledge. See Sunbelt Worksite Mktg., Inc. v. Metro. Life Ins. Co., No. 8:09–cv-2188-EAK-MAP, 2011 WL 3444256, at *2 (M.D. Fla. Aug. 8, 2011). Moreover, under Federal Rule of Evidence 803(6), the batch sheets are not inadmissible hearsay because they constitute Momentive's business records. (See Doc. 105.)

[3] At the December 1, 2011 hearing, RES also agreed that the batch sheets "reflect the chemical composition of the accused products in this case." (Doc. 101 at 47.) The batch sheets relied on by Dr. Razzano are attached to his declaration. (Docs. 106-4 – 106-12.) According to Jennifer Richard, a logistics leader at Momentive, each batch sheet was made by a Momentive employee who had knowledge of the production at the time the products were made. (Doc. 105.)

[4] Momentive's expert witness, Dr. Patrick E. Cassidy, also states that, based on his review of the batch sheets and other production information, the accused products have not

RES does not argue that the batch sheets show any change in the chemical composition of the accused products since the critical date. In fact, at the July 20, 2012 hearing, RES did not contest that the post-critical date batch sheets it had reviewed were identical to the pre-critical date batch sheets in all material respects. (See Doc. 135 at 43.) Moreover, RES also has not disputed that the batch sheets accurately show the chemical formulations of Momentive's products.

Not only has RES conceded that the batch sheets have not changed, but RES also has not suggested that there is any flaw in the way in which the batch sheets were created, such as a typographical or clerical error, or that the batch sheets are otherwise inaccurate. Moreover, RES has not argued that the accused products have materially changed in a way not captured on the batch sheets. When the Court repeatedly asked RES at the July 20, 2012 hearing why, if, as RES argues, the accused products had materially changed, the batch sheets had nevertheless remained the same, RES was unable to articulate a plausible explanation. (See Doc. 135.)[5]

Instead of showing that the batch sheets are somehow flawed, RES argues that, because there is a dispute of fact regarding infringement, summary judgment should not be granted on the issue of invalidity. Specifically, RES argues that its testing of post-critical

---

changed since the critical date. (Doc. 113 at 4.)

[5] Instead, RES speculated that perhaps Momentive has failed to produce the relevant documents, including additional batch sheets, that would show a change in the accused products. (Doc. 135 at 51.) The Court has already denied RES's requests for additional discovery and found that Momentive has produced all relevant documents that have been requested by RES, including all available batch sheets. (Docs. 86, 128.) RES cannot create an issue of fact by speculating that unproduced documents may support its position.

date samples shows that the additive used in FSL 7208 and 7210, like the additive in the '602 patent, is non-reactive. (Doc. 99-9 at 3.) RES then relies on statements from Momentive's witnesses that the additive identified in the batch sheets *is* reactive and thus does not embody the patented invention. (Docs. 99 at 10; 135 at 48.)[6] Based on this evidence, RES asserts that there is a dispute of fact as to whether the accused products have changed since the critical date, because the jury could find that the pre-critical date additive was reactive based on the testimony of Momentive's witnesses, but that the post-critical date additive is non-reactive based on RES's testing. (Docs. 99 at 8-13, 135 at 48-50.)[7]

Although RES has identified a potential dispute of fact as to whether the additive is reactive, this factual dispute has no logical relationship to the issue of whether the additive has changed since the critical date. This is because both parties' evidence on infringement applies with equal force both before and after the critical date. Momentive's witnesses say that the additive listed in the pre-critical date batch sheets is reactive; and, because the batch sheets have not materially changed since that time, they same the same thing about the post-critical date additive. Moreover, RES's evidence that the post-critical date products have a non-reactive additive is equally applicable to the pre-critical date products since it is

---

[6] RES's expert, Dr. Robert Moore, also asserts that the additive identified in the batch sheets is reactive. (Doc. 99-9 at 5-6.) Dr. Moore states that his opinion is based on the testimony of Momentive's witnesses.

[7] Invalidity under Section 102(b) is a question of law based on underlying facts. "One of those underlying facts is whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention." Leader Tech., Inc. v. Facebook, Inc., 678 F.3d 1300, 1305 (Fed. Cir. 2012).

undisputed that those products have the same chemical formulation, as reflected in the batch sheets.[8]

RES has presented no reasonable basis to apply Momentive's evidence only to those products made before the critical date, while applying RES's evidence only to those products produced after the critical date.  Under the facts of this case, where it is undisputed that the chemical formulations of the accused products have not changed since the pre-critical date sales and plaintiffs have been unable to test any pre-critical date products, a dispute of fact regarding infringement does not raise a factual dispute regarding invalidity under Section 102(b).

Not only is RES's argument logically flawed, but it also misunderstands applicable Federal Circuit precedent. As explained above, the Federal Circuit has held that a defendant can establish the on-sale bar by conceding infringement for purposes of summary judgment and then showing that the accused products are identical to those sold before the critical date. See, e.g., Teva Pharm., 661 F.3d at 1382.  Because Momentive has already conceded infringement for purposes of this motion, RES's testing, which allegedly shows the use of a non-reactive, infringing additive, is simply irrelevant.  Moreover, the other fact relied on by RES—the testimony of Momentive's witnesses that the batch sheets (from before and after the critical date) identify a reactive, and thus non-infringing additive—is equally irrelevant. For purposes of this motion, Momentive is entitled to rely on RES's accusations of infringement.  RES thus cannot use Momentive's evidence of non-infringement to contest

---

[8] The batch sheet for the sample tested by RES is materially identical to the batch sheets for products sold prior to the critical date. (Doc. 114 at 2.)

invalidity, at least where such evidence is equally applicable before and after the critical date. On a motion for summary judgment under Section 102(b), Momentive has the burden to show that the accused products are the same pre- and post-critical date, not that there is no dispute of fact regarding infringement.

RES also contends that certain Material Safety Data Sheets that were issued after the critical date show that the additive used in the accused products has changed. (Doc. 99 at 13-14.) According to RES, because these documents show two different specification numbers for the additive used in FSL 7210, they are evidence that Momentive changed additives at some point after the critical date. (Id.) However, Dr. Razzano asserts that, although the Material Safety Data Sheets list different specification numbers, these numbers refer to additives that are "chemically identical." (Docs. 106 at 4; 114 at 2.) RES has not attempted to contradict this testimony or otherwise show that the change in specification numbers is significant. Because the undisputed evidence shows that the Material Safety Data Sheets merely use two different names for the same additive, these documents are not evidence that the accused products have changed since the critical date.

RES has not presented any other evidence to support its theory that the accused products have materially changed. Notably, RES has not located any email, memorandum, or other document indicating that the formulation of the accused products has changed. As RES itself told the Court at the December 1, 2011 hearing, if Momentive had changed the composition of its products, it would be expected that such change would be revealed in the batch sheets. (Doc. 101 at 6.) ("The batch sheets help establish not just that Momentive was making products decades before the critical date, but what was in those products. . . . And

we're not willing, nor should we have to, take Momentive's statement just on good faith that they have been making the product in the same way for generations now. We want to see if that's really true. *And the batch sheets will tell us.*") (emphasis added).  The batch sheets, however, do not show any change in the accused products.

The uncontroverted, *relevant* evidence shows that Momentive has been making the accused products the same way for many years, both before and after the critical date.[9]  As a matter of law, Momentive has shown by clear and convincing evidence that, even when all reasonable inferences are drawn in favor of RES, the '602 patent is invalid under the on-sale bar of Section 102(b).[10]

---

[9] RES's contention that Dr. Razzano's declaration should be disregarded because Momentive has not satisfied the Federal Circuit's corroboration requirement is also without merit. The Federal Circuit has held that, "[g]enerally, corroboration is required of any witness whose testimony alone is asserted to invalidate a patent." Lazare Kaplan Intern., Inc. v. Photoscribe Techs., Inc., 628 F.3d 1359, 1374 (Fed. Cir. 2010) (quotation omitted); see also Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354 (Fed. Cir. 1999)(holding that the corroboration requirement applies to Sections 102(a), (b), and (g)). When determining if the corroboration requirement has been met, the court evaluates all of the pertinent evidence and considers the factors listed in Woodland Trust v. Flowertree Nursery Inc., 148 F.3d 1368 (Fed. Cir. 1998). "[T]he corroboration requirement's fundamental aim is to determine whether the 'testimony of the witnesses together with the documentary evidence provide a coherent and convincing story.'" Netscape Commc'ns Corp. v. ValueClick, Inc., 704 F. Supp. 2d 544, 555 (E.D. Va. 2010) (quoting Adenta GmbH v. OrthoArm, Inc., 501 F.3d 1364, 1371 (Fed.Cir.2007)).
   Here, Dr. Razzano's declaration primarily summarizes and explains batch sheets for FSL 7208 and 7210 from both before and after the critical date. (Doc. 106.) Dr. Razzano's statements are amply corroborated by the exhibits attached to his declaration, including copies of the batch sheets, which were created in the ordinary course of business at the time the accused products were made. See Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728, 743 (Fed. Cir. 2002) ("Reliable evidence of corroboration preferably comes in the form of physical records that were made contemporaneously with the alleged prior invention.").

[10] The Court thus need not discuss Momentive's arguments under Sections 102(a), and (g)(2).  However, because the only material dispute between the parties is whether the

Accordingly, it is hereby

**ORDERED**:

1. Momentive's Motion for Summary Judgment of Invalidity (Doc. 89) is **GRANTED**.

2. RES's Motion to Strike the Declaration of John S. Razzano (Doc. 98) is **DENIED**.

3. All remaining pending motions (Docs. 110, 120, 123, 124) are **DENIED AS MOOT**.

4. No later than **August 21, 2012**, counsel for Momentive, after conferring with counsel for RES, will submit a proposed form of final judgment.

**DONE AND ORDERED** at Jacksonville, Florida this 7th day of August, 2012.

TIMOTHY J. CORRIGAN
United States District Judge

js.
Copies:

counsel of record

---

accused products have changed, the Court alternatively finds that the '602 patent is invalid under Sections 102(a), and (g)(2) for the reasons discussed above.